UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: REALPAGE, INC., RENTAL SOFTWARE ANTITRUST LITIGATION (NO. II) | ) ) ) ) ) ) ) ) ) ) ) | Case No. 3:23-md-3071<br>MDL No. 3071<br><br>JURY DEMAND<br><br>Judge Waverly D. Crenshaw, Jr.<br><br>This Document Relates to:<br>ALL CASES |

**PLAINTIFFS' RESPONSE TO THE FIVE ATTORNEYS GENERAL'S MOTION TO INTERVENE**

Five Attorneys General—the District of Columbia, Kentucky, Maryland, New Jersey, and Washington (the "AGs")—ask this Court to intervene and to "clarify" or "modify" the recently entered Preliminary Approval Orders. While Plaintiffs take no position on the AGs' motion to intervene, Plaintiffs oppose the AGs' requested relief disturbing the Court's Preliminary Approval Orders. Specifically, the AGs assert that those Orders contain a newly "Expanded Injunction" that, for the first time, reaches enforcement actions prosecuted on behalf of Settlement Class Members by the government acting *parens patriae*. (Dkt. 1415-1, at 7-8.) This is incorrect. The Court's November 2025 preliminary approval order enjoined the prosecution of "any Released Claims" "in any forum" pending final approval. (Dkt. 1313 ¶ 16). From the outset, and as reflected in the extensive briefing on this issue (see Dkts. 1281, 1291, 1294), those Released Claims included claims that Settlement Class Members possess representatively, which includes claims asserted in a *parens patriae* capacity.[1]

The clause the AGs now characterize as an expansion does not enlarge the claims that were released or enjoined. Instead, the clause confirms, on the face of the Order, what the operative Settlement Agreements and the parties' prior briefing already made plain: a Class Member's released damages claim cannot be revived simply by having another entity prosecute it on the Class Member's behalf. This is, in substance, the AGs' second bite at the apple.

At any rate, the injunction is a routine *status-quo* measure that preserves class settlements pending final approval; it does not enjoin the AGs' sovereign or quasi-sovereign claims—civil penalties, and incremental injunctive relief remain untouched—and reaches only the released

[1] *See, e.g.,* Settlement Agreement ¶ 4(a), Dkt. 1250-4, at 57–58 (Greystar); Dkt. 1250-2, at 97, 138, 180, 221 ¶ 4(a); Dkt. 1250-3, at p. 137 ¶ 4(a) (releasing claims "that the [r]eleasors . . . ever had or now have directly [or] representatively" (including asserted in a *parens patriae* capacity)).

damages claims that belong to Settlement Class Members, which the AGs concededly seek to recover on those members' behalf. (Dkt. 1415-1, at 9.)

## BACKGROUND

### I. The Settlements Have Always Released Representative Damages Claims.

The MDL Plaintiffs reached settlements with most named Defendants, which this Court preliminarily approved in two sets. The Court approved the first set of settlements (the "Set 1 Settlements") on November 21, 2025. (Dkt. 1313.) The Court approved the second set of settlements (the "Set 2 Settlements") on May 22, 2026. (Dkt. 1406.) Across both rounds, each Settlement Agreement included a comprehensive release that covered any damages claims that could be asserted by an individual class or someone asserting a claim representatively on that person's behalf.

The Greystar Settlement (part of the Set 1 settlements) included a release that discharges "any and all claims . . . restitution, disgorgement . . . whether class, individual, or otherwise in nature, that the [r]eleasors . . . ever had or now have directly [or] representatively (including asserted in a *parens patriae* capacity) . . . in any way related to the conduct that was alleged or could have been alleged in this [a]ction." (Dkt. 1250-4, at 57–58 ¶ 4(a).) The remaining Set 1 settlements also released representative claims. Paragraph 1(z) of each agreement defines "Releasors" to include each Settlement Class Member, who each "release[] Released Claims on behalf of themselves ***and on behalf of any party claiming by, for, or through the Releasors*** . . . ."[2] And ¶ 4(a) of each settlement states that those Releasors "release" and "discharge" each settling defendant from "any and all claims . . . damages, matters and issues of any kind or nature whatsoever, . . . whether class, individual, or otherwise, that the Releasors, or any of them, ever

[2] *See, e.g.*, Dkt. 1250-2, at 9, Ex. A-1, Avenue5 Settlement Agreement, ¶ 1(z) (emphasis added).

had or now have *directly, representatively, derivatively, or in any other capacity* against any of the Releases . . . ."[3] To the extent that the AGs sued *parens patriae* to pursue damages on behalf of individual Class Members, those were "representative" or "derivative" claims covered by the Set 1 Settlements.[4] By contrast, the Set 1 Settlements did not release claims brought in a State's sovereign capacity. Greystar's (and other Settling Defendants') release makes the distinction explicit, providing that it "does not bar an investigation or action . . . by [a] state, quasi-state, or local governmental entity to vindicate sovereign or quasi-sovereign interests," (Dkt. 1250-4 at 58, ¶ 4(b)), and the remaining settlements released no sovereign claims.

Plaintiffs filed for preliminary approval of the Set 1 Settlements on October 1, 2025. (Dkt. 1246.) Plaintiffs included a proposed order specifying that, "Pending the Court's final determination of whether to approve the Settlements, Plaintiffs and Settlement Class Members are enjoined from prosecuting, pursuing, maintaining, or enforcing any Released Claims against Settling Defendants in any forum." (Dkt. 1246-1 ¶ 16.) Read in conjunction with the Releases referenced above, it was apparent that the injunction encompassed governmental *parens patriae* damages claims. The AGs' prior objection demonstrates that they understood this at the time.

On October 24, 2025, four of the AGs filed a Statement of Interest opposing preliminary approval of the Set 1 Settlements. (Dkt. 1281.) They argued that prosecuting actions *parens patriae* on behalf of individuals was the superior method to resolve the claims of individuals within their

---

[3] *See* Dkt. 1250-2, at 97, 138, 180, 221 ¶ 4(a) (emphases added); Dkt. 1250-3, at p. 137 ¶ 4(a). The Set 2 settlements likewise expressly reference claims asserted in a *parens patriae* capacity. *See* Dkt. 1396-1.

[4] *See Chapman v. Tristar Prods., Inc.*, 940 F.3d 299, 305 (6th Cir. 2019) ("'Interests of private parties are obviously not in themselves sovereign interests, and they do not become such simply by virtue of the State's aiding in their achievement. In such situations, the State is no more than a nominal party.'") (quoting *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 602 (1982)).

jurisdictions (*see* Dkt. 1281 at 11-15) but construed ¶ 16 of the Proposed Order as "potentially interfering with . . . their pending enforcement actions." (Dkt. 1281 at 14.) Specifically, they expressed concern that, if the Court entered the preliminary approval order, they could be "enjoin[ed] . . . from pursuing *parens patriae* damages [claims.]" (Dkt. 1281.)

The MDL Plaintiffs and the Overlap Defendants each responded. (Dkt. 1294; Dkt. 1291.) Plaintiffs explained that the MDL settlements "specifically carve out the AGs' enforcement claims, including sovereign and quasi-sovereign claims," that "[t]he AGs accordingly could continue to enforce any public rights they have," and that it was "otherwise appropriate for the releases to include provisions that would preclude the AG's from double-recovering for their residents in a *parens patriae* capacity." (Dkt. 1294 at 9 n.14.) The Overlap Defendants asserted that all the Set 1 Settlements released settling Defendants "from parens patriae claims" for damages but not sovereign capacity claims for injunctive relief or penalties (Dkt. 1291 at 12-14), and that the settlement releases would preclude overlapping *parens patriae* actions (*id.* at 15-16).

On November 5, 2025, the AGs sought leave to file a reply. (Dkt. 1295-1.) In that proposed reply, they asserted that it was "apparent that the proposed settlements purports to release *and enjoin* claims the settling parties have no authority to release[,]" (emphasis added) but that the Anti-Injunction Act (28 U.S.C. § 2283) ("AIA") "forbids federal courts from enjoining State enforcement actions." (Dkt. 1295-1 at 4.) The Overlap Defendants sought leave to file an additional brief in response (Dkt. 1301), in which they argued that the All Writs Act (28 U.S.C. 1651) would permit an injunction here and that AIA did not apply in this context (Dkt. 1301-1.)

On November 21, 2025, after receiving this extensive briefing, the Court entered an Order granting preliminary approval. (Dkt. 1313.) In it, the Court ordered that "Plaintiffs and Settlement Class Members are enjoined from prosecuting, pursuing, maintaining, or enforcing any Released

Claims against Settling Defendants in any forum" pending final approval. (Dkt. 1313 ¶ 16.) The Court held that this injunction was "necessary to protect, effectuate, and aid the Settlements, this Order, and the Court's jurisdiction and judgments." The Court's Order incorporated the definition of "Released Claims" from the Set 1 Settlements which, as discussed above, including representative claims brought on behalf of any Class Member; it did not carve out representative claims brought in a *parens patriae* capacity.

## II. <u>The Set 2 Order and the Modification Order Confirm—Rather Than Expand—the Injunction's Scope.</u>

On May 14, 2026, the MDL Plaintiffs (a) moved for preliminary approval of a second set of settlements (the "Set 2 Settlements") (Dkt. 1396) and (b) moved to amend the November Order to conform the Settlement Class definition across all settlements so that a single, uniform definition would govern notice, claims, and distribution (Dkt. 1401). Each Set 2 Settlement included terms stating that "Releasors" would be releasing Released Claims on "behalf of themselves and on behalf of any party claiming by, for, or through the Releasors in any capacity"[5] and defining Released Claims to include claims brought "representatively, derivatively or in any other capacity (including in a *parens patriae* capacity)."[6] Each proposed order included a proposed injunction, including identical language as in the November 2025 preliminary approval order except to add the clause "(and any person or entity purporting to act or bring claims on behalf of Settlement Class Members)," which simply captured what the Court had previously defined as the injunction's scope. (Dkt. 1396-1, 1401-1.) On May 22, 2026, the Court granted both motions. (Dkt. 1406; Dkt. 1407.) The Set 2 Order and the Modification Order each enjoin "Plaintiffs and Settlement Class Members (and any person or entity purporting to act or bring claims on behalf of Settlement Class

---

[5] *See, e.g.*, Dkt. 1398-2, Exhibit A-27, Camden Settlement ¶ 1(cc).
[6] *Id*. at 16, Exhibit A-27, Camden Settlement ¶ 4(a).

Members)" from prosecuting Released Claims "in any forum" pending final approval. (Dkt. 1406 ¶ 16; Dkt. 1407 ¶ 5.)

## ARGUMENT

### I. <u>The Motion Is, in Substance, an Untimely Motion for Reconsideration of a Fully Briefed Issue.</u>

The AGs frame their motion as a request to "clarify" the Orders, (Dkt. 1415-1, at 18-20). They seek a ruling that the injunction does not reach representative damages claims prosecuted on Class Members' behalf and suggest the inclusion of additional language in the recent injunctions is a new issue. However, the terms of the Set 1 Settlements, the Court's November 2025 Preliminary Approval Order, and the parties' extensive briefing at the time shows that the original proposed injunction covered (and was reasonably understood to cover) derivative or representative *parens patriae* claims for damages on behalf of individual Class Members. The Court entered the injunction despite the AGs' objections. The inclusion of an additional parenthetical in the recent injunctions was not intended to—and did not—expand the scope of the original injunction. Instead, it just reinforced the original injunction. The operative restraint in every iteration is the prosecution of "any Released Claims," which have always included claims held representatively, "including asserted in a *parens patriae* capacity." (Dkt. 1250-4, at 57–58 ¶ 4(a).) An enjoined Class Member cannot escape the injunction by deputizing another entity to prosecute the same released claim on the member's behalf; that has always been the necessary import of enjoining the Released Claims "in any forum." The parenthetical simply makes that explicit. And despite the AGs' attempt to conflate the issue, it *does not* reach sovereign claims, which are explicitly carved out of the Released Claims.

The Court entered preliminary approval on the existing record without limiting the injunction as the AGs urged. (Dkt. 1313 ¶ 16.) A request to revisit that determination is a motion

for reconsideration in substance, whatever its caption, and Rules 59(e) and 60(a) do not supply a vehicle for relitigating an argument the Court has already considered and declined to adopt. Rule 60(a), in particular, is confined to correcting clerical mistakes that cause an order to misstate the court's intent; it does not authorize a substantive change to an order that says exactly what the moving parties requested and what the Court intended. And the AGs do not even attempt to meet Rule 60(b)'s exacting standards—because they cannot.

## II. <u>The Settlements Validly Release and the Injunction Properly Protects Representative Damages Claims, Not Sovereign Claims.</u>

### A. Class Members May Release Representative Damages Claims, Including Those Pursued in a *Parens Patriae* Capacity.

The claims that the injunction reaches are damages claims that belong to Settlement Class Members. A recovery obtained by a State in a *parens patriae* capacity is not the State's own: "The law is clear . . . that the money" so recovered "ultimately belongs to the claimant individuals, not the government."[7] Here, those representative damages claims belong to Class Members. Accordingly, Class Members may release them. Courts approve those types of releases over attorney general objections to prevent the double recovery that would otherwise result.[8]

Courts have approved settlements in other cases adopting the same distinction. In *In re Deepwater Horizon*, the class release reached claims asserted "directly, indirectly, derivatively,

[7] *In re Am. Invs. Life Ins. Co. Annuity Mktg. & Sales Pracs. Litig.*, 2013 WL 3463503, at *8 (E.D. Pa. July 10, 2013).
[8] *See In re Generic Pharms. Pricing Antitrust Litig.*, 2025 WL 2777570, at *5 (E.D. Pa. Sept. 26, 2025) (granting final approval over the objection that the settlement released *parens patriae* and disgorgement claims, where the objecting States "have not shown that their *parens patriae* authority . . . supplants the ability of consumers to pursue actions for damages"); *California v. IntelliGender, LLC*, 771 F.3d 1169, 1179–81 (9th Cir. 2014); *Esslinger v. HSBC Bank Nev., N.A.*, 2012 WL 5866074, at *7 n.2 (E.D. Pa. Nov. 20, 2012).

representatively or in any other capacity,"[9] and several States objected that it infringed their authority to sue *parens patriae* for releasing class members; the court rejected the objection, holding that the States could not invoke the doctrine where the challenge "simply represent[ed] an effort to advance the particular financial interests of a subset of these states' citizens."[10] That is precisely the interest the AGs assert: by their own description, their *parens patriae* actions "seek . . . *parens patriae* damages under state and federal law" (Dkt. 1415-1 at 9.) for "a subset of the[ir] [] citizens" (*Deepwater Horizon*, 910 F. Supp. 2d at 943), arising from the same conduct alleged in this MDL. Those representative claims are therefore released.

### B. The Injunction Leaves the AGs' Sovereign Claims Undisturbed.

The AGs' central fear—that the Orders reach "sovereign enforcement claims and remedies that belong exclusively to the States"—is unfounded because the injunction does not, and cannot, reach such claims. (Dkt. 1415-1 at 7.)

By its terms, the injunction restrains only the prosecution of "Released Claims." (Dkt. 1313 ¶ 16.) Sovereign claims are not Released Claims. The MDL Plaintiffs agree with the AGs that Plaintiffs have never possessed civil-penalty, or sovereign injunctive-relief claims that belong exclusively to the AGs, and a Class Plaintiff cannot release—or obtain an injunction against—claims it never held. Indeed, the same authority the AGs rely on recognizes that, "attorneys' general law enforcement powers are not claims the plaintiffs have, and as such, the plaintiffs do not release any of these claims."[11] The AGs therefore remain free to prosecute their civil-penalty,

---

[9] *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, Case No. 2:10-md-02179-CJB-DPC (E.D. La.) Dkt. 6276-1 at 72.
[10] *In re Deepwater Horizon*, 910 F. Supp. 2d 891, 943 (E.D. La. 2012). The release language there closely tracks the representative-capacity release in the Settlement Agreements here. *See* Dkt. 1250-4 at 57–58 ¶ 4(a).
[11] *In re Am. Invs. Life Ins. Co. Annuity Mktg. & Sales Pracs. Litig.*, 263 F.R.D. 226, 241 (E.D. Pa. 2009); *accord* Dkt. 1415-1, at 23(citing same).

and sovereign injunctive-relief claims—indeed, the relief they describe as "only recoverable by Attorneys General," (Dkt. 1415-1 at 9)—without limitation.

The only thing they may not do, pending final approval, is prosecute the released damages claims of Settlement Class Members, whether in their own names or on those Class Members' behalf.

### C. Courts Routinely Enter Status-Quo Injunctions Protecting Class Settlements, Including Against Representative Damages Claims.

The injunction is an unremarkable status-quo measure of the kind courts enter at preliminary approval to protect the settlements and the Court's jurisdiction pending final approval. The Second Circuit's decision in *In re Baldwin-United Corp.* is instructive: it held that a district court overseeing a federal action of substantial scope properly acted to protect and effectuate its order provisionally approving eighteen settlements, explaining that if "states or others could derivatively assert the same claims on behalf of the same class or members of it, there could be no certain[ty] about the finality of any federal settlement," a risk that "would threaten all of the settlement efforts . . . and destroy the utility of the multidistrict forum."[12]

The Second Circuit affirmed the district court's injunction on findings that are equally applicable here: (1) the court had jurisdiction over the case in chief, supplying ancillary All Writs Act authority to bind even non-parties with notice; (2) the settlements were provisionally approved and released related claims on the same factual predicate; (3) the threatened parallel prosecution went beyond mere duplication and would "seriously impair the federal court's flexibility and authority" over a proceeding so advanced it was "the virtual equivalent of a res"; (4) the injunction

---

[12] *In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*, 770 F.2d 328, 337 (2d Cir. 1985); *see also Carlough v. Amchem Prods., Inc.*, 10 F.3d 189 (3d Cir. 1993); *In re Diet Drugs*, 282 F.3d 220, 235–37 (3d Cir. 2002).

was necessary to "protect and effectuate" the provisional-approval order; that it was specific enough to apprise those bound of the proscribed conduct; and (5) the persons restrained had actual notice and an opportunity to seek relief. (*Id*. at 336-40.) Critically, the Court confirmed that the injunction reached only representative and derivative claims the recovery on which "would not go to the state but ultimately to the plaintiffs," and that the label a State affixes—"restitution," "penalty," or "sovereign"—"would make no difference if the recovery sought by the state was to be paid over to the plaintiffs." (*Id*. at 341, 337.) Each finding as explained by the Second Circuit supports the injunctive provisions here, and the Court approved Order sets them out.[13]

Courts enter such injunctions at the preliminary-approval stage and apply them to entities prosecuting Class Members' claims derivatively. For example, in *Sykes v. Mel S. Harris & Associates, LLC*, 2015 WL 9165601, at *10 (S.D.N.Y. Nov. 16, 2015), the court enjoined class members and those acting "derivatively for any of them (including any person or entity purporting to act parens patriae for Class Members)" from prosecuting other actions pending the final-approval determination. Other courts are in accord.[14] The parenthetical that the AGs challenge here mirrors that established formulation. Where, as here, a court can target the duplicative

---

[13] The AGs incorrectly claim that two Sixth Circuit decisions are dispositive of their contention that AIA's "necessary in aid of jurisdiction exception" does not apply here. Dkt. 1415-1 at 21 (citing *Hanover Am. Ins. Co. v. Tattooed Millionaire Ent., LLC*, 38 F.4th 501, 508 (6th Cir. 2022) and *In re Life Invs. Ins. Co. of Am.*, 589 F.3d 319, 331 & n.11 (6th Cir. 2009)). But neither case controls given the factual and procedural dissimilarities. As the Sixth Circuit in *Hanover American* observed: "*Life Investors* did not disavow the possible applicability of the exception to 'coordinated class action[s] under the authority of the MDL panel,' it declined to rule on the issue as that case did not involve either scenario. The same is true here—while the litigation between TME, Falls, and Hanover may be complex, it is neither a class action nor under the authority of the MDL panel. . . . [W]e follow the same path as *Life Investors* and reserve the issue for another case." *Hanover American* 38 F.4th at 510 (citing *Life Invs. Ins. Co.*, 589 F.3d at 331 n.11.

[14] *See also, e.g.*, *Simerlein v. Toyota Motor Corp.*, 2019 WL 1435055, at *18 (D. Conn. Jan. 14, 2019); *In re Am. Invs. Life Ins. Co. Annuity Mktg. & Sales Pracs. Litig.*, 2013 WL 3463503, at *5 (E.D. Pa. July 10, 2013) (enjoining *parens patriae* claims where the class members' restitution claims were based on transactions covered by the federal settlement).

damages claims rather than the parallel litigation wholesale, it may enjoin *parens patriae* claims seeking damages for members of the settlement class while leaving sovereign relief undisturbed.

## III. **The AGs' Anti-Injunction Act and Rule 65 Arguments Fail Because the Injunction Operates Only on Released Claims.**

The AGs argue that, read to reach their actions, the injunction would violate the Anti-Injunction Act ("AIA") and Federal Rules of Civil Procedure 65 and 52. (Dkt. 1415-1 at 19-22.) The argument rests on a mistaken view that the injunction reaches their sovereign enforcement actions. It does not. The injunction restrains only the prosecution of Released Claims—the released, representative damages claims of Settlement Class Members. The injunction does not enjoin the AGs' sovereign claims, which the AGs remain free to prosecute in their chosen forums.

In any event, to the extent any restraint on released damages claims implicates the AIA, courts overseeing complex MDLs have long recognized authority to protect and effectuate their settlement-approval process under the All Writs Act, as *Baldwin-United* and its progeny confirm. The AGs' contrary authorities do not show otherwise. Those cases address either (a) injunctions directed at sovereign enforcement actions—relief the MDL Plaintiffs do not seek and the Orders do not affect—or (b) settlements that, unlike the settlement at issue here, provided no meaningful relief to class members, far from the expansive monetary and non-monetary relief obtained in this Action.

## IV. **The AGs' Renewed Adequacy Arguments Are Premature and Foreclosed.**

As with the Set 1 Settlements, the AGs again argue that the settlements provide inadequate relief because, in their view, the injunctive terms leave too much intact and the monetary recovery is too small. (Dkt. 1415-1 at 25-27.) These arguments fail for two independent reasons already established in the prior briefing. First, they are premature. Courts do not second-guess settlement terms at the preliminary, pre-notice stage, where the reaction of absent class members is unknown.

Instead, adequacy objections are reserved for the final-approval hearing, after notice, when the class members—the real parties in interest—can be heard.[15]

Second, the AGs lack standing to object to the adequacy of relief on behalf of their residents. Under binding Sixth Circuit authority, a State's objections to a class settlement on behalf of its citizens are "indistinguishable from the objections which individual [citizens] might raise," and the right to raise them belongs to the class members, not the State; neither the *parens patriae* doctrine nor the Class Action Fairness Act supplies a State a right to object to settlement adequacy.[16] The AGs' admitted interest here—securing damages for their residents—is the interest of those private parties. This makes each State a nominal party without standing to object to the relief's adequacy. The Court should reserve any adequacy questions for final approval.[17]

## V. <u>The Injunction Serves the Interests of the Class and the Court.</u>

Finally, the injunction is necessary. If the released damages claims of Settlement Class Members could be prosecuted elsewhere pending final approval—by class members directly or by others on their behalf—then Settling Defendants could face duplicative recovery on the claims that they bargained to resolve, the finality the settlements depend upon would be cast in doubt, and the prospect of further settlements would be undermined. The *status quo* injunction prevents that disruption while preserving every sovereign claim the AGs possess. It is a measured, conventional

---

[15] *See Elliott v. LVNV Funding, LLC*, 2019 WL 4007219, at *10 (W.D. Ky. Aug. 23, 2019); *Wilson v. Anthem Health Plans of Ky., Inc.*, 2019 WL 6898662, at *2 (W.D. Ky. Dec. 18, 2019); *Zepeda v. PayPal, Inc.*, 2015 WL 13781535, at *6 (N.D. Cal. Mar. 25, 2015).

[16] *Chapman v. Tristar Prods., Inc.*, 940 F.3d 299, 303–07 (6th Cir. 2019); *see also Paterson v. Texas*, 308 F.3d 448, 451 (5th Cir. 2002). A State seeking to assert *parens patriae* standing "must articulate an interest apart from the interests of particular private parties" and "must be more than a nominal party." *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 602, 607 (1982).

[17] Of course, these objections also fail for a third reason: the $359 million in monetary and valuable injunctive relief is a substantial benefit to the Settlement Class members. Notably, the objecting AGs have not recovered anywhere near these sums on behalf of their residents.

tool that protects the Court's jurisdiction and the relief the Settlements deliver to renters nationwide, without intruding on the AGs' sovereign enforcement authority.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny the AGs' motion to clarify or modify the Preliminary Approval Orders. Nothing in the Orders enjoin the AGs from prosecuting sovereign or quasi-sovereign claims. Instead, the injunction reaches only the released damages claims of Settlement Class Members, which include any claims asserted representatively such as *parens patriae* claims, and does so to preserve the *status quo* pending final approval. To the extent that the Court is inclined to address the AGs' concern, the MDL Plaintiffs do not oppose entry of an order confirming that the injunction restrains only the prosecution of Released Claims and does not reach claims brought in the AGs' sovereign capacity.

Dated: June 15, 2026


*/s/ Tricia R. Herzfeld*
Tricia R. Herzfeld (#26014)
Anthony A. Orlandi (#33988)
**HERZFELD SUETHOLZ GASTEL LENISKI AND WALL, PLLC**
1920 Adelicia St., Suite 300
Nashville, TN 37212
Telephone: (615) 800-6225
tricia@hsglawgroup.com
tony@hsglawgroup.com

*Liaison Counsel*

Patrick J. Coughlin
Carmen A. Medici
Heidi B. Weaver
Bridget Gramme
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 West Broadway, Suite 3300
San Diego, CA 92101
Telephone: (619) 798-5325
Facsimile: (619) 233-0508
pcoughlin@scott-scott.com
cmedici@scott-scott.com
hweaver@scott-scott.com
bgramme@scott-scott.com

Patrick McGahan
Amanda F. Lawrence
Michael Srodoski
G. Dustin Foster
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
156 South Main Street
P.O. Box 192
Colchester, CT 06145
Telephone: (860) 537-5537
Facsimile: (860) 537-4432
pmcgahan@scott-scott.com
alawrence@scott-scott.com
msrodoski@scott-scott.com
gfoster@scott-scott.com

Matthew J. Perez
Daniel F. Loud
Fatima Brizuela
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**

230 Park Ave., 24th Floor
New York, NY 10169
Telephone: (212) 223-6444
matt.perez@scott-scott.com
dloud@scott-scott.com
fbrizuela@scott-scott.com

Stacey Slaughter
Thomas J. Undlin
Geoffrey H. Kozen
J. Austin Hurt
Caitlin E. Keiper
Navy A. Thompson
Sam R. Black
**ROBINS KAPLAN LLP**
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Telephone: (612) 349-8500
Facsimile: (612) 339-4181
sslaughter@robinskaplan.com
tundlin@robinskaplan.com
gkozen@robinskaplan.com
ahurt@robinskaplan.com
ckeiper@robinskaplan.com
nthompson@robinskaplan.com
sblack@robinskaplan.com

Swathi Bojedla
**HAUSFELD LLP**
1200 17th Street, Suite 600
Washington, DC 20036
Telephone: (202) 540-7200
sbojedla@hausfeld.com

Gary I. Smith, Jr.
Samuel Maida
**HAUSFELD LLP**
580 California Street, 12th Floor
San Francisco, CA 94111
Tel: (415) 633-1908
gsmith@hausfeld.com
smaida@hausfeld.com

Mindee Reuben
**HAUSFELD LLP**
325 Chestnut Street, Suite 900
Philadelphia, PA 19106

Telephone: (215) 985-3270
mreuben@hausfeld.com

Shayla J. Harris
Jacob R. Leiken
**HAUSFELD LLP**
33 Whitehall St., 14th Fl.
New York, NY 10004
Telephone: (646) 357-1100
sharris@hausfeld.com
jleiken@hausfeld.com

*Interim Co-Lead Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

*/s/ Tricia R. Herzfeld*
Tricia R. Herzfeld